**SO ORDERED.**

**SIGNED this 15 day of October, 2012.**

_____
**J. Rich Leonard**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:

ROBERT EDGAR FARMER,                    CASE NO. 10-09353-8-JRL

    DEBTOR.                                         CHAPTER 12

## ORDER

This matter came before the court on a motion to lift the automatic stay and for an offset of funds that was filed by the United States of America on behalf of its agency, the Farm Service Agency ("FSA"), United States Department of Agriculture.  A hearing was held on October 9, 2012, in Raleigh, North Carolina.

The debtor filed a petition for relief under chapter 12 of the Bankruptcy Code on November 11, 2010.  The FSA has a prepetition claim against the debtor arising from farm loans made to the debtor.  The debtor signed up to participate in the Direct and Countercyclical Program (DCP) of the United States Department of Agriculture.  Upon application by the debtor on May 31, 2012, the United States Department of Agriculture determined that the debtor was entitled to DCP funds in the amount of $7,255.00 for the 2012 crop year.  On September 11, 2012, the FSA filed the motion currently before the court requesting an offset of the DCP

payments owed by the FSA to the debtor and a related lift of the automatic stay in order to pursue the offset.  At issue in this case is whether the debt owed by the FSA to the debtor under the DCP for the 2012 crop year arose prepetition or postpetition.

At the hearing, Mike Huskey, from the FSA, testified that the DCP began in 2002 with the passage of the 2002 farm bill.  The program was continued in 2008 through that year's farm bill, the Food, Conservation, and Energy Act of 2008.  Upon the passage of the DCP, certain farmland became entitled to funds based on the crop yields of 1998 through 2002.  The entitlements extended into the future, through the 2012 crop year.  In order to receive the funds for his land, a farmer must apply with the FSA each year.  The applicant must be an owner, operator, or producer of land for that crop year.  A person who leases farmland can receive the DCP payments to which that land is entitled, provided he had control over the land for the relevant crop year.  An applicant need not plant a crop in order to receive payments under the DCP.

The debtor testified that, for the 2012 crop year, he owns roughly 10% of the land that he controls.  The other 90% of the land is leased on a year-by-year basis.  All of the arrangements for the leasing of land for 2012, including the payment of rent and the signing of the annual leases, were done at the end of 2011 or in 2012, well after the filing of the chapter 12 bankruptcy in November 2010.

A creditor may be entitled to an offset if he can show (1) the claim of the creditor against the debtor arose prepetition; (2) the claim of the debtor against the creditor arose prepetition; and (3) the debt and the claim are mutual obligations. 11 U.S.C. § 553(a).  In this case, the claim of the FSA against the debtor arose prior to the filing of the chapter 12 petition on November 11,

2010.  Additionally, it is undisputed that the debt and the claim are mutual obligations.  What is in question is whether the claim of the debtor against the FSA for the 2012 DCP payments arose prepetition.

The debtor's land, both owned and leased, became eligible for DCP funds in 2008 with the passage of the 2008 farm bill which extended the DCP into 2012.  At that point, in 2008, the FSA became obligated to pay out these DCP payments for the next four years.  The recipient of such payments would be the person who controlled the land for the relevant crop year.  At the time of the debtor's chapter 12 filing on November 11, 2010, the FSA was obligated to pay to the debtor, in 2012, the DCP payments associated with the land which the debtor owned.  That claim against the FSA arose prepetition.  The fact that the debtor was required to continue to own the land and file an application to receive the 2012 funds is not sufficient conduct to characterize the obligation as postpetition.  In re Gibson, 308 B.R. 763, 768 (Bankr. N.D.Tex. 2002).

With respect to the leased land, in 2010, the FSA's obligation to make DCP payments was not to the debtor, as it was not apparent that he would have control over that land in 2012.  The events giving rise to the debtor's control over the leased land occurred when he signed the leases for the 2012 crop year, which happened after the filing in 2010.  Here, the critical events which formed the basis of the claim occurred postpetition.  In re Baseline Sports, Inc., 393 B.R. 105, 129 (Bankr. E.D. Va. 2008).  Therefore, the debt of the FSA to the debtor tied to the leased land arose postpetition.

Based on the foregoing, the FSA is entitled to offset its claim against the debtor with 10% of the funds that the agency owes to the debtor for the land the debtor owns.  The FSA is

3

not entitled to offset its claim against the debtor with the DCP payments it owes to the debtor for the leased land as this debt did not arise prepetition.  Accordingly, the United States of America's motion to offset is **GRANTED IN PART** and **DENIED IN PART**.

**END OF DOCUMENT**
